1  Matthew Follett (SBN 325481)
   Mfollett@FoxRothschild.com
2  FOX ROTHSCHILD LLP
   10250 Constellation Blvd, Suite 900
3  Los Angeles, California 90067
   Telephone:  310.598.4150
4  Facsimile:   310.556.9828

5  Attorneys for Defendant
   AETNA HEALTH OF CALIFORNIA, INC.
6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  SALOOJAS, INC.,                          Case No. 22-cv-01696-JSC

12              Plaintiff,                    **SUPPLEMENTAL BRIEF IN
                                              SUPPORT OF MOTION TO
13         v.                                 DISMISS PLAINTIFF'S
                                              COMPLAINT FOR FAILURE TO
14  AETNA HEALTH OF CALIFORNIA,               STATE A CLAIM**
    INC.
15                                            Hon. Jacqueline S. Corley
                Defendant.
16                                            Date:      N/A
                                              Time:      N/A
17                                            Location: N/A

18

19

20

21

22

23

24

25

26

27

28
                                    1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant AETNA HEALTH OF CALIFORNIA, INC, through its counsel of record, submits this Supplemental Brief (the "Brief") in Support of its Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (the "Motion").

The Brief was ordered by the Court on May 2, 2022. Dkt. No. 18. It is based upon the accompanying Memorandum of Points and Authorities, all files and records in this case, and any such arguments and evidence as may be presented at or before the hearing, if there is one, on this pending Motion.

**II.     ARGUMENT**

**A.     CONGRESS SET FORTH AN ADMINISTRATIVE ENFORCEMENT SCHEME THAT DELEGATES ENFORCEMENT OF SECTION 3202 TO THE U.S. DEPARTMENT OF HEALTH.**

Section 3202(a) of the *Coronavirus Aid, Relief, and Economic Security Act*, Pub. L. No. 116-136 (2020) ("CARES Act") addresses pricing for the services required under the CARES Act and requires plans to pay either "the cash price for such services as listed by the provider on a public internet website" or a rate negotiated with the provider before or after the service in question was provided. The only enforcement of that provision, found in section 3202(b), provides that the Secretary of Health and Human Services may impose civil monetary penalties on any ***provider*** who fails to post the cash price for SARS-CoV-2 testing on its public website.

The Departments of Labor, Health and Human Services, and Treasury published jointly prepared "Frequently Asked Questions" ("FAQs") regarding implementation of the *Families First Coronavirus Response Act*, Pub. L. No. 116-127 (2020) ("FFCRA"), and the CARES Act. Neither the statutes, nor the FAQS designed to clarify, restricted the enforcement delegated to the Secretary of Health

and Human Services. The FAQs, however, do solicit feedback on how it can "best monitor abusive practices." FAQs about [FFCRA] and [CARES] Act Implementation Part 44, Feb. 26, 2020, Q44. They also suggest the potential for states to aid in enforcement compliance. FAQs about [FFCRA] and [CARES] Act Implementation Part 43, June. 23, 2020, Q44. Neither the statute nor the FAQs mention private enforcement as a potential means for responding to purported violations of any provision.

The express authority granted by Congress to the Secretary of Health and Human Services, including the power to assess civil fines on violators of section 3202, presents a sturdy obstacle that must first be surmounted if claiming a private cause of action. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex Cnty. Sewerage Authority v. National Sea Clammers Ass'n*, 101 S.Ct. 2615, 2623 (citation omitted); *see also id.* ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."); *see also Poli v. Mountain Valleys Health Centers, Inc.,* 2006 WL 83378, at *2 (E.D.Cal.,2006) ("By delegating enforcement of [statute] to Secretary of Health and Human Services, Congress evinced an intent to preclude enforcement by private individuals.")

Nowhere in section 3202, or any other provision, is there *indicia* of congressional intent to provide a private cause of action. No prior drafts of the statute evidence contemplation of a private remedy for providers, and neither does a search of the statute's congressional record. As such, the Court must conclude that Congress "provided precisely the remedies it considered appropriate." 101 S.Ct. 2615 at 2623.

133910714.1

B.   **EVEN THE ABSENCE OF AN ENFORCEMENT SCHEME WOULD FAIL TO DEMONSTRATE THE CLEAR CONGRESSIONAL INTENT NECESSARY TO IMPLY A PRIVATE CAUSE OF ACTION.**

Even if an enforcement scheme were absent from section 3202, it must still be concluded that Congress had no intent to create a private remedy because of the total absence of any indication otherwise in the statute itself or its legislative history.

In *Cort v. Ash*, the Supreme Court set forth the four factors it considered relevant when determining whether a private cause of action is implicit in a statute. Since then, however, it has made clear that not all carry the same weight. *Touche Ross & Co. v. Redington*, 99 S.Ct. 2479, 2489. Rather, the first three: a statute's language and focus, legislative history, and purpose, should be the Court's focus. *See id*; *see also California v. Sierra Club*, 101 S.Ct. 1775, 1781, 451 (congressional silence about private rights in language of statute and legislative history dispositive regarding whether statute was intended to create private rights.)

The Supreme Court has made clear the burden when claiming a private cause of action despite a legislative history silent on the matter. *See Touche Ross & Co. v. Redington*, 99 S.Ct. 2479, 2484 (reversing Second Circuit panel that found a private cause of action within section 17(a) of the Securities Exchange Act of 1934 "even though [the Second Circuit panel] acknowledged that the legislative history of the section is mute on the issue.") (internal quotation marks omitted); *See also California v. Sierra Club*, 101 S.Ct. 1775, 1780 (noting that statute's legislative history was silent on issue of private remedy and confirmed that Congress was unconcerned with private rights).

Plaintiff has all but conceded a legislative history of the CARES Act that is silent regarding congressional intent to provide private remedies. *See Pl. Opp*. at 13:6-12. In the wake of such resounding silence, something in the language of the

4

133910714.1

statute itself must point to one. Simply implying one because section 3202's use of "shall" diverts from sound logic because Congress knows how to grant private rights of action, along with other remedies, and has demonstrably done so for other legislation which—just like the CARES Act—was passed in response to the pandemic. In the FFCRA, for example, Congress created causes of action to remedy improper denials of emergency, paid employment leave by expressly incorporating enforcement provisions of the *Fair Labor Standards Act of 1938* and the *Family and Medical Leave Act of 1993*. *See* FFCRA §§ 3102, 5102, 5105, 29 C.F.R. § 826-150(b), 151(b). Pursuant to section 5102 of FFCRA, for example, an employer "shall provide" paid sick time to an employee where the employee is subject to a Federal, State, or local quarantine or isolation order related to COVID–19. An employer that fails to provide it may otherwise be liable for legal and equitable relief. *See* FFCRA § 5102 and § 5105 (employer that "violates section 5102 shall— (1) be considered to have failed to pay minimum wages in violation of section 6 of the Fair Labor Standards Act of 1938 (29 U.S.C. 206); and (2) **be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216; 217)**" (emphasis added))

The FFCRA—which was passed by the ***same*** 116th Congress that passed Section 3202 of the CARES Act[1]—demonstrates, *inter alia*, that Congress' mere use of "shall" does not demonstrate the intent Plaintiff must show for the Court to conclude not only that Congress wanted to create a private cause of action, it also wanted to create a private remedy. "Even where a statute is phrased in ... explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy." *Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1073 citing *Gonzaga University v. Doe*, 122 S.Ct. 2268, 2269 (internal quotation marks

---

[1] To wit, the CARES Act was signed into law *after* the FFCRA.

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

133910714.1

1  omitted). To sum, had Congress wanted private enforcement of the CARES Act, it
2  knew how to make its intent clear—and it did not.
3  **III.    CONCLUSION**
4        The enforcement scheme set forth by Congress to enforce section 3202 of the
5  CARES Act strongly evinces that Congress did not intend private remedies under
6  the section. Even if it had not set forth the scheme, however, its absence alone
7  would not be enough to conclude that Congress intended to imply private remedies.

8  Dated:  May 16, 2022                    **FOX ROTHSCHILD LLP**
9

10
11                                         */s/ Matthew Follett*
                                           Matthew Follett
12                                         Attorneys for Defendant
                                           AETNA HEALTH OF CALIFORNIA,
13                                         INC.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6