Law Office of Michael Lynn Gabriel
MICHAEL LYNN GABRIEL CA Bar 86924
1903A COOLEY AVE
EAST PALO ALTO, CA. 94303
1-650-888-9189
aetal@earthlink.net
Attorney for Plaintiff Saloojas, Inc

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO, DIVISION

---

| | |
|---|---|
| SALOOJAS INC, | CASE NO: 22-CV-01696 |
| Plaintiff | 22-CV-01702 |
| | 22-CV-01703 |
| vs | 22-CV-01704 |
| | 22-CV-01706 |
| AETNA HEALTH OF CALIFORNIA, INC | |
| | SUPPLEMENTAL BRIEF |
| Defendant. | |

## INTRODUCTION

The Court has asked for additional briefing on the issue of administrative enforcement of the CARES ACT.

There is no administrative scheme set forth for the CARES ACT. That is why the cases turn on whether there is a private right of action for enforcement. The Court's order was rather too narrow and missed the real issue of whether a lawsuit can be maintained at all which was addressed in both the Texas and Connecticut Courts independent of the CARES ACT.

TITLE OF DOCUMENT:    SUPPLEMENTAL BRIEF

PAGE NO  1  OF   10

Both the Texas and Connecticut courts reached differing opinions as to whether there is implied right of action to enforce the CARES Act. The Ninth Circuit will be the tie breaker on that issue until the Supreme Court decides it permanently

Nonetheless, both the Texas and Connecticut courts permitted the suits to go further and raise the CARES Act issue independently of a private right of action on the ERISA violation and RICO as well as state causes of action

Plaintiff using both the decisions of both of the courts as a starting point has filed a Federal Class action lawsuit against Aetna not only for the violation of the CARES Act but also for the violations of ERISA derived for not paying for the rendered COVID testing services mandated by the CARES Act as well as RICO. The Class action complaint is attached herewith as an Exhibit and is case **5:22-CV-02887**

***Plaintiff will also be filing similar and separate class action complaints against the other insurance companies which have not been paying for the rendered COVID Testing services provided under the CARES Act: Anthem, United HealthCare, Blue Shield, Cigna and Kaiser.*** All total there are 31,772 patients for whom these insurance companies have not fully paid the Plaintiff for the rendered Covid Testing services provided to their insureds in direct violation of the CARES Act, ERISA and RICO

In these other future class action suits, Plaintiff will not be alone as the represented Plaintiff. Several insured individuals who have not had their COVID testing bills paid in full will be joining as Representative Plaintiffs for the millions of insured Americans who were denied coverage under the CARES ACT when they went to out of network providers and then were assessed deductibles or charged copayments in violation of Federal law.

TITLE OF DOCUMENT:     SUPPLEMENTAL BRIEF

PAGE NO  2  OF   10

The suits which were filed in superior court were based on both the CARES ACT and ERISA which required the bills be paid. So the class actions will be going forward for the same reasons that both the Texas and Connecticut court set forth om allowing the suits to go forward. Both courts allowed the suits on the ERISA claims and Texas went further and allowed it specifically on the CARES Act with a finding of an implied private right of action.

The Plaintiff is an out of network provider of Covid-19 testing series. The Plaintiff has rendered up to now over 35,000 COVID 19 examinations. In each case, the patients have come to the urgent care, saw a doctor and were tested. If just one out of network provider in one county can have over 35,000 cases, other other of network providers will have similar numbers. Plaintiff as a Representative Plaintiff for all such out of network providers is bringing the suits.

The CARES Act requires that insurance companies pay for the Covid testing to the out of network provider either at a negotiated rate or the provider's cash posted prices on a public web site.

Of the over 35,000 total cases, in 31,772 cases, the Plaintiff was not paid in full and in fact in many of those cases the patients were sent statements by the insurance companies stating they that owed the balance to the Plaintiff. Aetna as one of those insurance companies owes the Plaintiff for over 2,000 cases where it has not fully paid for the Covid testing Services in violation of the CARES ACT.

The CARES ACT straightforwardly directs insurers like Aetna to pay OON providers who furnish Covid Testing. Importantly, the statutes go further, describing how the amount such providers must be paid will be calculated. Section 3202(a)(2) of the CARES Act states that **"such plan or issuer shall reimburse the provider in an amount that equals the cash**

**price for such service as listed by the provider on a public internet website . . [emphasis added].**" This provision **BY ITS VERY NATURE** grants private rights to members of an identifiable class.

Thus, the statutes express Congress's intent to create a personal right in OON providers like Plaintiff who provide Covid Testing services and have the right to be reimbursed at the statutorily mandated amount.

In enacting the CARES ACT, Congress wanted providers to be confident that if they participated in the national effort to combat the pandemic through widespread testing and diagnosis, they would be reimbursed appropriately. Such assurance was essential given the extensive costs (not to mention the personal risk) providers faced in setting up broad testing capability. Congress was well aware that, if left to their own devices, insurance companies would protect their economic interests and do what they could to avoid paying for the massive testing required to defeat the disease. Accordingly, Congress specifically removed nearly all discretion and back doors that insurers might use to avoid coverage. Congress wanted widespread testing, and they wanted insurers to pay for it.

Moreover, if there were no private right of action, patients and medical providers would be left remediless. The statute intended to prevent medical providers from directly billing the patients here, but that is apparently what Aetna wants. This is inappropriate.

In the context of a public health emergency, where as of today nearly 1,000,000 Americans have died, and the President is flying flag at half mask in memorial to the Covid dead, the federal government sought to encourage extensive and swift Covid Testing and to incentize providers like Plaintiff to accept the inherent risks in providing these tests by ensuring they would be paid promptly at a rate set by law.

TITLE OF DOCUMENT:     SUPPLEMENTAL BRIEF

PAGE NO   4  OF   10

The FFCRA and the CARES Act mandate that plans and insurers like Aetna cover these tests at the provider's cash price as posted on its website or the negotiated rate. Moreover, knowing of the risk that health plans like Aetna would attempt to line their coffers by imposing burdensome obstacles on patients and providers who seek payment for testing, the federal government warned that plans and issuers shall not attempt to "limit or eliminate other benefits . . . to offset the costs o1 increasing the generosity of benefits related to the diagnosis and/or treatment of COVID-19.'" *See* FAQs, Part 42 (April 11, 2020). Accordingly, it is in keeping with the text,

1. **STANDING TO CHALLENGE VIOLATIONS OF THE FFRCA AND CARES ACT UNDER ERISA**

Regardless of whether Plaintiff has a private right of action under the FFCRA and the CARES Act, Plaintiff is also entitled to challenge Aetna's unlawful practices through the private rights of action provided under ERISA. Specifically, ERISA ,§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) permits a plan participant or beneficiary to bring a civil action to recover plan benefits, enforce his or her rights under the plan, or clarify rights to future benefits. "Congress's creation of this cause of action has given patients a right to enforce the insurance coverage they contracted for. They were given a right to recompense for an actual injury and have standing to pursue alleged breaches of this statutory duty.'" <u>N. Cypress Med Cir Operating Co. v Cigna Healthcare,</u> 781 F.3d. 182, 194 (5th Cir.2015). ERISA § 502(3), 25 U.S.C. § 1132(a)(3) further permits a plan participant or beneficiary to seek to "enjoin any act or practice which violates any provision" of ERISA or the terms of the plan, or "to obtain other appropriate equitable relief' to "redress such violations or . . . enforce any provisions" of ERISA.

TITLE OF DOCUMENT:   SUPPLEMENTAL BRIEF

PAGE NO   5   OF   <u>10</u>

A.     Plaintiffs Standing to Assert an ERISA Claim for Benefits

          i.     *Derived Standing from Validly Executed Assignments of Benefits*

Congress, the Department of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") have clearly established that Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage, and the term "group health plan" includes both insured and self-insured group health plans and employment-based health plans subject to ERISA. See FAQs, Part 42 (April11, 2020). If Congress did not intend ERISA or its statutory remedies to not to be incorporated into the FFCRA and the CARES Act then Congress would have specifically carved out the requirements for group health plans subject to ERISA to comply with the requirements of Section 6001 of the FFCRA and Section 3202(a) of the CARES Act rather than explicitly include them. As such, because Covid Testing services is now a federally mandated benefit that is required to be covered by any and all group health plans subject to ERISA, any failure by a group health plan subject to ERISA to properly adjudicate claims for Covid Testing services and reimburse a provider in accordance with how such benefit should be covered subjects the group health plan to an ERISA claim for benefits.

"It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivative to enforce an ERISA plan beneficiary's claim." **_Harris Methodist Fort Worth v Sales Support Servs Inc Employee Health Care Plan_** 426 F.3d 330, 333-334 (5th Cir 2005)  Here, Plaintiff has standing because it routinely receives broad assignments of benefits from its patients.

The Fifth Circuit has maintained that "ERISA health care benefits are assignable,"

TITLE OF DOCUMENT:     SUPPLEMENTAL BRIEF

PAGE NO   6   OF   10

<u>Cell Sci Sys Corp v Louisiana Health Serv</u> 804 F.App. 260, 264 (5th Cir 2020) and "that the ability of patients to assign their claims to medical providers is both permissible and beneficial" <u>N.Cypress Med Cir Operating Co. supra</u>. The purpose of designating Plaintiff as an authorized representative and assignee is to allow it to bc able to pursue a full range of legal and administrative remedies in the event of any adverse benefit determination."

<u>Outpatient Specialty Surgery Partners Ltd v. Unitedhealthcare Inc.</u> No 4:15 – CV- 2983 (S.D. Tex June 24, 2016) As part of the assignment of benefits executed by patients. the patients: (i) acknowledge that Plaintiff is an OON provider, (ii) designates Plaintiff as its authorized representative; and (iii) assigns and authorizes Plaintiff the right to be directly reimbursed for Covid Testing services. As a result, by virtue of the validly executed assignment of benefits, Plaintiff has standing to pursue an ERISA claim for benefits against United and the Employer Plans, especially since the fifth Circuit has taken the following position:

> "To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress's goal of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front." The providers are better situated and financed to pursue an action for benefits owed for their services. Allowing assignees of beneficiaries to sue under §1132(a) composts with the principle of subrogation generally applied in the law." <u>Harris Methodist Fort Worth v Sales Support Servs Inc Employee Health Care Plan,</u> supra

II.  **Conferred Standing From the FFCRA and the CARES Act to Sue Under ERISA**

Additionally, under the unique circumstances of this case, the relevant federal legislation

TITLE OF DOCUMENT:     SUPPLEMENTAL BRIEF

PAGE NO   7  OF   10

makes clear that medical providers have standing to sue for an insurer's violation of the law. As described in detail above, the goal of the FFCRA and the CARES Act's approach to COVID testing was to remove any financial burden from the patients. The Departments specifically provide the following guidance as it relates to coverage of Covid Testing services and Congress's intention of setting a specific reimbursement methodology for reimbursement for such services as to avoid from OON providers having to bill patients:

**Q9. Does section 3202 of the CARES ACT protect participants, beneficiaries, and enrollees from balance billing for a COVID 9 diagnostic visit?**

> The departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID 19 test. **Section 3202(a) contemplates that a provider of COVID 19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website.** In either case the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore. the statute generally precludes balance billing COVID19 testing However. section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements." See FAQs Part 43 (June 23, 2020)

The FFCRA and the CARES Act were passed in response to the public health emergency declared under Section 319 of the Public Health Service Act. The purpose of including Section 6601 of the FFCRA and Section 3202(a) of the CARES Act was to two-fold: (l) to motivate and to provide reasonable assurances to providers capable of providing Covid Testing services that they would be reimbursed for the Covid Testing services it rendered throughout the course of the public health emergency; and (2) to provide reasonable assurances to members of health plans that they would not be held personally financially

responsible for Covid Testing services as it would disincentivize persons from being tested, in turn, further exacerbating the pandemic. This conscious decision by Congress to eliminate the patient from the reimbursement chain in OON Covid Testing situations obviates the ordinary requirement for an OON provider to obtain a valid assignment, and, in the event there is an anti-assignment provision in the terms of the health plan— which there usually is — to obtain a validly executed and notarized special power of attorney.

The possibility of an implied right of action is analyzed under the following four-part test:

1. Is this plaintiff a member of the class for whose "especial" benefit the statute was passed. In other words, does the statute create a federal right for this plaintiff?

2. Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?

3. Is it consistent with the legislative scheme to imply a private remedy?

4. Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate? *Lundeen v. Mineta*, 291 F. 3d 421, 433 (S.D. Tex. 2020)

When everything is considered, and the tests applied, the only reasonable conclusion is that there is an implied private right of action under the CARES Act independent from the right of action derived from the ERISA and RICO.

Respectfully, this Court should rule that these emergency laws passed in the midst of public health emergency have special exception, and confer standing to Plaintiff, and other similarly situated providers, to pursue this remedy under both the CARES Act and ERISA.

Respectfully submitted

Dated   May 16, 2022                     Law Office of Michael Lynn Gabriel

                                         /s/ Michael Lynn Gabriel
                                         Attorney For Plaintiff

TITLE OF DOCUMENT:    SUPPLEMENTAL BRIEF

PAGE NO   9  OF   10