UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOOJAS, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>AETNA HEALTH OF CALIFORNIA, INC.,<br><br>　　　　　　Defendant. | Case Nos.　22-cv-01696-JSC<br>　　　　　　22-cv-01702-JSC<br>　　　　　　22-cv-01703-JSC<br>　　　　　　22-cv-01704-JSC<br>　　　　　　22-cv-01706-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS** |

　　　　Plaintiff, a healthcare provider, brings five related cases against an insurer for underpaying for COVID testing of five patients.[1] Before the Court are Defendant's identical motions to dismiss each of the five cases. (Case No. 22-cv-01696-JSC, Dkt. Nos. 5, 7, 14, 17, 19, 20; Case No. 22-cv-01702-JSC, Dkt. Nos. 7, 14, 18, 20, 21; Case No. 22-cv-01703-JSC, Dkt. Nos. 5, 11, 15, 17, 18; Case No. 22-cv-01704-JSC, Dkt. Nos. 6, 12, 16, 18, 19; Case No. 22-cv-01706-JSC, Dkt. Nos. 7, 14, 18, 20, 21.)[2] After carefully considering the parties' initial and supplemental briefing, (*see* Dkt. No. 18), the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS the motions as explained below.

---

[1] (*See* Case No. 22-cv-01696-JSC, Dkt. No. 1 at 6 ("Patient ID no: 2069047"); Case No. 22-cv-01702-JSC, Dkt. No. 1 at 6 ("Patient ID no: 2068896"); Case No. 22-cv-01703-JSC, Dkt. No. 1 at 6 ("Patient ID no: 2068125"); Case No. 22-cv-01704-JSC, Dkt. No. 1-1 at 3 ("Patient ID no: 2068239"); Case No. 22-cv-01706-JSC, Dkt. No. 1 at 6 ("Patient ID no: 2069003").) A sixth related case does not have a pending motion to dismiss. (Case No. 22-cv-02887-JSC.)

[2] Record citations are to material in the Electronic Case File ("ECF") for Case No. 22-cv-01696-JSC, unless otherwise indicated; pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

Plaintiff alleges Defendant underpaid for COVID tests that Plaintiff provided to Defendant's insureds between November 20 and 23, 2020. Plaintiff is outside of Defendant's provider network. It alleges that under Section 3202(a)(2) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Defendant must "pay the entire bill at posted prices without any deductions for cop[a]y or deductibles." (Dkt. No. 1 at 7.) For the five patients at issue, Plaintiff contends Defendant owes $922, $1,090, $1,090, $924, and $922, each rounded up to $2,500 to account for a "balance" of "punitive damages . . . for intentional violation" of the CARES Act. (*Id.* at 6.)[3]

Plaintiff filed in small claims court in Alameda County. It attached as an exhibit an undated letter from Plaintiff to Defendant, on letterhead of AFC Urgent Care of Newark, appealing Defendant's payment decision and asserting that the CARES Act requires Defendant to pay Plaintiff's posted cash prices. (*Id.* at 12–15.) For two cases, Plaintiff attached October 2021 letters from Defendant to Plaintiff, each denying an appeal request because it was filed after the 60-day deadline. (*Id.* at 16–17; Case No. 22-cv-01703-JSC, Dkt. No. 1 at 16.) For the other three cases, Plaintiff attached an acknowledgement of appeal request, an acknowledgement of dispute, and an appeal denial, respectively.[4] (Case No. 22-cv-01702-JSC, Dkt. No. 1 at 17; Case No. 22-cv-01704-JSC, Dkt. No. 1-1 at 13; Case No. 22-cv-01706-JSC, Dkt. No. 1 at 12.)

Thereafter, Defendant removed to federal court. Defendant moves to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), on the grounds that the CARES Act does not provide a private right of action to Plaintiff.

**DISCUSSION**

Section 3202 of the CARES Act provides:

PRICING OF DIAGNOSTIC TESTING.

---

[3] (*See* Case No. 22-cv-01702-JSC, Dkt. No. 1 at 6; Case No. 22-cv-01703-JSC, Dkt. No. 1 at 6; Case No. 22-cv-01704-JSC, Dkt. No. 1-1 at 3; Case No. 22-cv-01706-JSC, Dkt. No. 1 at 6.)

[4] The Court takes judicial notice of these documents attached to the complaints. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

> (a) REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:
>
> > (1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.
> >
> > (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.
>
> (b) REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID–19.—
>
> > (1) IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider.
> >
> > (2) CIVIL MONETARY PENALTIES.—The Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID–19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing.

Pub. L. 116–136, § 3202 (Mar. 27, 2020), 134 Stat. 367. Thus, Section 3202 referenced and amended Section 6001(a) of the Families First Coronavirus Response Act ("FFCRA"). *See id.* § 3201; Pub. L. 116–127, § 6001(a) (Mar. 18, 2020), 134 Stat. 178. Section 6001, in turn, provides:

> COVERAGE OF TESTING FOR COVID–19.
>
> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency period defined in paragraph (1)(B) of section 1135(g) of the Social Security Act (42 U.S.C. 1320b–5(g)) beginning on or after the date of the enactment of this Act:
>
> > (1) In vitro diagnostic products (as defined in section 809.3(a) of title 21, Code of Federal Regulations) for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized under section 510(k), 513, 515 or 564 of the Federal Food, Drug, and Cosmetic Act, and the

3

>     administration of such in vitro diagnostic products.
>
>         (2) Items and services furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro diagnostic product described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product.
>
>     (b) ENFORCEMENT.—The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in the provisions of part A of title XXVII of the Public Health Service Act, part 7 of the Employee Retirement Income Security Act of 1974, and subchapter B of chapter 100 of the Internal Revenue Code of 1986, as applicable.
>
>     (c) IMPLEMENTATION.—The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise.
>
>     (d) TERMS.—The terms "group health plan"; "health insurance issuer"; "group health insurance coverage", and "individual health insurance coverage" have the meanings given such terms in section 2791 of the Public Health Service Act (42 U.S.C. 300gg–91), section 733 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1191b), and section 9832 of the Internal Revenue Code of 1986, as applicable.

Pub. L. 116–127, § 6001. Plaintiff bases its claim on CARES Act Section 3202(a)(2)'s directive that an insurer "shall reimburse" the provider at "the cash price" of testing if the insurer "does not have a negotiated rate" with the provider. Pub. L. 116–136, § 3202(a). Plaintiff concedes that the CARES Act provides no express right of action for its testing reimbursement claim, but argues there is an implied right of action.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The Supreme Court's opinions in *Cort* and *Alexander* govern whether a statute implies a private right of action. *Id.*; *Cort v. Ash*, 422 U.S. 66 (1975); *see McGreevey v. PHH Mortg. Corp.*, 897 F.3d 1037, 1043–44 (9th Cir. 2018). *Cort* lays out four factors:

>     First, is the plaintiff one of the class for whose especial benefit the

4

> statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (cleaned up). The Ninth Circuit has explained that the *Cort* factors "remain relevant," but "the focus now is on" *Alexander*. *McGreevey*, 897 F.3d at 1043. *Alexander* asks "whether Congress displays through the statute an intent to create not just a private right but also a private remedy. Statutory intent . . . is determinative; without Congress's intent to create a remedy, no right of action can be implied." *Id.* at 1043–44 (cleaned up); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979) ("[*Cort*] did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."). Courts "begin . . . [the] search for Congress's intent with the text and structure of" the statute. *Alexander*, 532 U.S. at 288.

The Court is aware of only two cases that have addressed whether an implied right of action exists for a testing reimbursement claim under the CARES Act. *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20cv1675(JBA), 2022 WL 743088, at *2–6 (D. Conn. Mar. 11, 2022) (no); *Diagnostic Affiliates of Ne. Hou, LLC v. United Healthcare Servs., Inc.*, No. 2:21-CV-00131, 2022 WL 214101, at *4–9 (S.D. Tex. Jan. 18, 2022) (yes).

### A. Text and Structure of the CARES Act

The text and structure of the CARES Act do not show congressional intent to create a private right of action for COVID-19 test providers like Plaintiff. The CARES Act creates rights and duties for providers: in Section 3202(a), the right to reimbursement of the published cash price from an insurer who does not have a negotiated rate, and in Section 3202(b), the duty to publish a cash price. Section 3202(a), the substantive basis for Plaintiff's claim, has no enforcement language. Pub. L. 116–136, § 3202(a). Section 3202(b) provides that the Secretary of Health and Human Services "may impose a civil monetary penalty on any provider of a diagnostic test . . . that is not in compliance with" the requirement to publish a cash price. *Id.* § 3202(b). Thus, Section 3202 only contemplates enforcement against providers, not against insurers who fail to

5

reimburse providers, and only administrative enforcement, not a private right of action.

For its part, FFCRA Section 6001 provides that the Secretaries of Health and Human Services, Labor, and the Treasury may enforce Section 6001(a) against "group health plans and health insurance issuers." Pub. L. 116–127, § 6001(b); *see* Pub. L. 116–136, § 3202(a) (referencing FFCRA Section 6001(a)). Assuming without deciding that FFCRA Section 6001 allows the Secretaries to enforce CARES Act Section 3202(a) against insurers, that would not show congressional intent to create a private right of action for providers like Plaintiff to enforce the provision against insurers. *See Alexander*, 532 U.S. at 289 ("Nor do the methods that § 602 goes on to provide for enforcing its authorized regulations manifest an intent to create a private remedy; if anything, they suggest the opposite."); *see also Murphy Med.*, 2022 WL 743088, at *5 n.5 (noting Secretaries' joint Frequently Asked Questions document and ambiguity regarding administrative enforcement scheme).

In its supplemental brief, Plaintiff argues that it is separately entitled to challenge Defendant's reimbursement through private rights of action created by the Employee Retirement Income Security Act ("ERISA"). (Dkt. No. 20.) This argument fails because nothing in Plaintiff's complaint references ERISA. The small claims complaint states, "COVID TESTING SERVICE[S] under the CARES ACT were rendered . . . . Insurance company owes $922 and the balance is punitive damages to $2,500 for the intentional violation of the Federal CARES ACT." (Dkt. No. 1 at 6.) "[U]nder the CARES ACT sec 3202(a)(2)[,] Defendants are required to pay the entire bill at posted prices . . . . Plaintiff appealed the denial of full payment mandated under the CARES ACT . . . ." (*Id.* at 7.) Thus, the complaint does not "give the defendant fair notice" that ERISA provides "the grounds upon which" Plaintiff's claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). CARES Act Section 3202(a)'s reference to FFCRA Section 6001, which in turn refers to ERISA, is too removed to provide notice that Plaintiff's claim rests on an ERISA private right of action. *See* Pub. L. 116–136, § 3202(a); Pub. L. 116–127, § 6001(b), (d).

### B. *Cort* Factors

Turning to the *Cort* factors, to the extent they "remain relevant," *McGreevey*, 897 F.3d at

1043, three factors weigh in favor of an implied private right of action but the most important factor does not. *See Touche Ross*, 442 U.S. at 575 ("[*Cort*] did not decide that each of these factors is entitled to equal weight.").

First, the CARES Act "create[s] a federal right in favor of" Plaintiff: the right to reimbursement at the posted cash price. *Cort*, 422 U.S. at 78; *see* Pub. L. 116–136, § 3202(a)(2). Third, it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy." *Cort*, 422 U.S. at 78. The purpose of this part of the CARES Act scheme is to incentivize healthcare organizations to provide COVID-19 testing and to make testing widely available to prevent the spread of COVID-19. *See Diagnostic Affiliates*, 2022 WL 214101, at *6 ("[T]he legislative objective was to ensure that COVID-19 testing was widely available to the entire population."), *9 ("Congress wanted widespread COVID-19 testing, which could only be accomplished by private entities quickly incurring the cost of establishing testing sites across the country and procuring the necessary supplies to administer tests."). Fourth, a cause of action for diagnostic testing reimbursement, particularly with respect to the global pandemic, is not "traditionally relegated to state law" or "in an area basically the concern of the States." *Cort*, 422 U.S. at 78.

The second, most important factor echoes *Alexander* in considering whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." *Id.* As explained above, there is no indication of implicit intent to create such a remedy and Plaintiff concedes there is no indication of explicit intent. Although there is no indication of intent to deny a remedy, *see Diagnostic Affiliates*, 2022 WL 214101, at *8, that is not enough to imply one. *See McGreevey*, 897 F.3d at 1043–44; *Murphy Med.*, 2022 WL 743088, at *5 ("[I]f Congress has manifested no intent to provide a private right of action, the Court cannot create one." (cleaned up)).

The district court's opinion in *Diagnostic Affiliates* does not persuade the Court otherwise. On the most important *Cort* factor and the primary inquiry under *Alexander*, the court concluded that "the administrative enforcement scheme cannot be said to evidence an intent to deny a private right of action." 2022 WL 214101, at *8. "[C]lear rights to reimbursement were created and no

7

other enforcement mechanism exists. An implied private right of action is a more appropriate construction of the statute than the creation of a right without any remedy." *Id.* This reasoning does not square with the Supreme Court's directive in *Alexander*: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative." 532 U.S. at 286 (citation omitted). Thus, the reasoning in the other district court case, *Murphy Medical*, is more persuasive. 2022 WL 743088, at *2–6.

\* \* \*

The CARES Act does not provide an implied private right of action for Plaintiff to seek reimbursement of its posted cash price. Accordingly, Plaintiff's complaint does not state a claim on which relief could be granted. *See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (noting that dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" (cleaned up)).

Although amendment of a CARES Act claim would be futile, Plaintiff argues that it could amend its complaint to state a claim under ERISA. Without the benefit of full briefing, the Court cannot conclude that such claim would fail as a matter of law. Accordingly, leave to amend is proper. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

## CONCLUSION

Defendant's motions to dismiss are GRANTED. Plaintiff may file amended complaints that assert claims under ERISA on or before **July 25, 2022**.

This Order disposes of Docket No. 5 in Case No. 22-cv-01696-JSC; Docket No. 7 in Case No. 22-cv-01702-JSC; Docket No. 5 in Case No. 22-cv-01703-JSC; Docket No. 6 in Case No. 22-cv-01704-JSC; and Docket No. 7 in Case No. 22-cv-01706-JSC.

**IT IS SO ORDERED.**

Dated: June 23, 2022

JACQUELINE SCOTT CORLEY
United States District Judge

8